FILED
08/28/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 3, 2025 Session

## STATE OF TENNESSEE v. MICHAEL CHAD OWENS

**Appeal from the Criminal Court for DeKalb County**
**No. 2020-CR-98     Wesley T. Bray, Judge**

_____

### No.  M2024-01123-CCA-R3-CD

_____

The Defendant, Michael Chad Owens, appeals his DeKalb County convictions for the sale and delivery of heroin and methamphetamine and resulting forty-five-year effective sentence. Specifically, the Defendant challenges that (1) the State failed to sufficiently establish the chain of custody for the narcotics; (2) the evidence was not sufficient to sustain his convictions due to chain of custody issues; (3) his right to confrontation was violated when the confidential informant ("CI") involved in the controlled buys did not testify at trial; (4) the probative value of the admitted photograph of the CI was substantially outweighed by its danger of unfair prejudice; (5) the Defendant's alleged impairment at trial prejudiced the jury against him; (6) his sentences are excessive; and (7) the fines imposed by the trial court are excessive. After review, we remand the case to the trial court for a hearing with regard to the fines and for entry of corrected judgment forms reflecting the sentence and fine for each conviction. We affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part and Reversed in Part; Case Remanded**

KYLE A. HIXSON, J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Mingy K. Ball, Smithville, Tennessee, for the appellant, Michael Chad Owens.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Dugan, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Russell C. Tribble and Evan R. Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I.    FACTUAL AND PROCEDURAL HISTORY

In June 2019, the Defendant engaged in two transactions, one involving heroin and the other involving methamphetamine, with Jessica Owens, a CI, who was working with the DeKalb County Sheriff's Office ("DCSO").  From these transactions, a DeKalb County grand jury indicted the Defendant for the sale of heroin (count 1), the delivery of heroin (count 2), the sale of methamphetamine in an amount less than one-half gram (count 3), and the delivery of methamphetamine in an amount less than one-half gram (count 4).[1] Tenn. Code Ann. §§ 39-17-417, -434.

Prior to trial, the State moved to admit the audio and video recordings of the controlled buys absent testimony from the CI.  The State explained that the CI had passed away and argued that the evidence was still admissible because it could be properly authenticated under Tennessee Rule of Evidence 901(a) by the testimony of law enforcement officers involved in the controlled buys, and the recordings did not violate the Defendant's right to confrontation because the CI's statements in the recordings were non-testimonial hearsay.

The Defendant moved to suppress the audio and video recordings of the controlled buys and "any and all reports and testimony regarding the receipt or testing of any drugs" that were turned over to law enforcement by the CI.  He argued, in relevant part, that such evidence was inadmissible because it would violate his right to confront the CI and because the CI was the only person able to authenticate the narcotics evidence under Tennessee Rule of Evidence 901.  Without this, the State would have no evidence linking the Defendant to the narcotics turned over by the CI.  The Defendant additionally objected to "the picture" of the CI being presented at trial because the CI would be unavailable to testify as to the relevance of the photograph or the "true purpose of the alleged meeting."

A hearing was held on the parties' motions; however, a transcript of this hearing is not included in the appellate record.  In a written order filed on April 6, 2023, the trial court indicated that during this hearing it received evidence regarding the recordings of the controlled buys from the testimony of Detective Steve Barrett with the DCSO.  From the evidence presented and the arguments of the parties, the trial court denied the Defendant's motion to suppress, and pertinent to this appeal, ruled that testimony of law enforcement officers involved in the controlled buys satisfied the requirements of Tennessee Rule of

---

[1] The Defendant was originally indicted in counts 1 and 2 for the sale and delivery of heroin in a drug-free zone.  Tenn. Code Ann. §§ 39-17-417, -432.  A superseding indictment was returned in April 2023 that removed the drug-free zone component from these counts.

Evidence 901(a) regarding the audio and video recordings of these transactions. Additionally, the trial court ruled that the statements made by the CI in these recordings were not hearsay because these statements were not being offered for the truth of the matter asserted but to provide context for the statements made by the Defendant and to prove there was a conversation regarding the sale of drugs. Therefore, the trial court found that the admission of the recordings did not violate the Defendant's right to confrontation. The trial court reserved the other evidentiary issues raised for trial.

At trial, Chief Deputy Brian Williams testified that, in 2019, he was a detective with the DCSO. At that time, the CI approached law enforcement about targeting the Defendant for a narcotics investigation. Chief Deputy Williams was familiar with the Defendant and had previously worked with the CI. Two controlled buys were arranged, one for June 21, 2019, with heroin as the targeted substance, and another for June 25, 2019, with methamphetamine as the targeted substance. He stated that the CI had passed away since these transactions occurred. The State showed Chief Deputy Williams two photographs of the CI: a small, black-and-white driver's license photograph and a color, portrait-style photograph. Chief Deputy Williams responded that he was unable to identify the CI from the driver's license photograph because he could not tell whether the subject was the CI or the CI's sister. Chief Deputy Williams was able to identify the subject in the portrait-style photograph as the CI, confirming that the CI looked "about like that around" the time of the controlled buys. The photograph was admitted without a contemporaneous defense objection. During cross-examination, Chief Deputy Williams explained that he was unaware that the photograph was over twenty years old and stated that the CI was in her forties during the controlled buys.

Prior to each controlled buy, the CI met with Chief Deputy Williams and Detective Barrett at a predetermined location. Chief Deputy Williams searched the CI and explained that these searches were to prevent allegations that the CI had narcotics prior to meeting the Defendant. He confirmed that he regularly searched CIs for contraband and was familiar with where contraband was typically concealed.

During Chief Deputy Williams' testimony, the trial court announced that the parties were going to take up a matter outside the jury's presence. Once the jury exited the courtroom, the trial court admonished the Defendant for disrupting the trial, stating,

> Earlier today[2] under oath you told me that you were not under, look at me, you told me that you were not under the influence of any drug or narcotic. And you keep sitting there and disrupting my courtroom while

---

[2] The earlier conversation referenced by the trial court is not contained in the record on appeal.

- 3 -

we're trying to have a trial. You sit there, I [found] you credible earlier today, which only means now that you are intentionally trying to disrupt the trial. Because you're falling asleep, you appear to be falling asleep, I don't think that you're falling asleep, I don't think that you're under the influence of any drug or narcotic. You told me earlier you were not. So I find that you [appear] only to be disinterested.

The trial court informed the Defendant that the trial would continue with or without him and gave the Defendant "a minute . . . to walk around and wake [] up[.]" The court recessed from 11:44 a.m. until 11:47 a.m., and the trial resumed.

The State moved to enter the video recordings of the June 21, 2019 controlled buy for heroin. The trial court asked whether defense counsel had any objections to which defense counsel said, "No objection[,]" then stated, "Your Honor, just for the record I would renew the same objection that was prior. The prior objection, renewing it for this video." A jury-out hearing was held, and the trial court asked defense counsel to explain her objection. Defense counsel responded, "The same objection that was filed in the Motion to Suppress, Your Honor. I was just renewing the objection to preserve it." The trial court responded that it had already ruled on the motion to suppress. When asked whether defense counsel had any additional arguments, defense counsel answered "No, sir." The jury returned to the courtroom, and the video recordings were played for the jury.

Det. Barrett described the events that occurred on the June 21, 2019 recordings and identified and described still-shot photographs taken from the recordings. Det. Barrett explained that he outfitted the CI with a recording device, which had two cameras that captured both audio and video, and with a transmitter that allowed law enforcement to listen to the transaction in real time. Once the CI was equipped with the recording devices, he and Chief Deputy Williams gave her the money for the transaction and transported her near a park on Smith Road, where the transaction would take place. A vehicle was parked at this location, and the Defendant was sitting on the passenger side of the vehicle with the door open. As the CI approached the vehicle, the Defendant threw an L&M cigarette pack on the ground, told the CI to pick up the cigarette pack, and made a statement "along the lines, [that] he was scared of the narcotics on the ground" because "it was a federal charge." Det. Barrett explained that the CI picked up the cigarette pack from the ground and gave the Defendant the money.

After the transaction, the CI walked over to the park, sat down, retrieved a lighter and a cigarette from her person, and began smoking. Both Chief Deputy Williams and Det. Barrett did not recall the CI's having a lighter or a cigarette pack on her person when Chief Deputy Williams searched her prior to the controlled buy. While Chief Deputy Williams

- 4 -

opined that the CI would not have had a personal pack of cigarettes on her person after the search, Det. Barrett noted that tobacco cigarettes were not contraband, and it was not uncommon for CIs to have such items in their pockets. Additionally, while the CI walked over to the park, one of the videos went black. However, both Chief Deputy Williams and Det. Barrett explained this was likely due to the CI's shirt obstructing the camera lens and noted that the other camera continued to operate without obstruction.

The CI returned to the vehicle where Det. Barrett and Chief Deputy Williams were waiting. Once back in the vehicle with law enforcement, the CI handed the L&M cigarette pack to Chief Deputy Williams who sealed the cigarette pack in an evidence bag. They returned to the original meeting location, searched the CI again for contraband, and deactivated the recording equipment. The L&M cigarette pack was taken back to the DCSO and processed by Chief Deputy Williams. During this process, Chief Deputy Williams retrieved a small, folded piece of paper containing a powder substance. Chief Deputy Williams placed the L&M cigarette pack and its contents into the DCSO's evidence room.

Det. Barrett confirmed that another controlled buy involving the Defendant took place on June 25, 2019, for the purchase of methamphetamine. The State entered the video recording and still-shot photographs of the transaction without objection. Det. Barrett confirmed that his role during this transaction was the same as in the previous controlled buy. The CI again met with him and Chief Deputy Williams at a predetermined location, was searched, equipped with the same recording devices, and given the money for the transaction. He and Chief Deputy Williams transported the CI to a residence on Earl Avenue, where the Defendant was thought to live. The CI approached the residence and was met by the Defendant at the door. While inside the residence, the CI gave the Defendant the money, and the Defendant gave the CI a crystal-like substance contained in a white, folded sheet of paper. The CI returned to the vehicle where Det. Barrett and Chief Deputy Williams were monitoring the transaction and gave the evidence to Chief Deputy Williams. Once back at the original meeting location, the CI was searched again, the recording devices were deactivated, and the evidence was taken to the DCSO, processed, and placed into evidence by Chief Deputy Williams.

Det. Barrett confirmed that he was the evidence custodian for the DCSO at the time of the June 21 and 25 controlled buys. Once placed in the evidence room, the evidence was "under lock and key" and "under video surveillance[,]" with only Det. Barrett having access. He then scheduled an appointment with the Tennessee Bureau of Investigation ("TBI") to drop off the evidence for testing. On the day of the appointment, he transported the evidence to the TBI and then retrieved the evidence on a later date from the TBI once testing was complete.

TBI Special Agent Benjamin Hubert, an expert in the field of forensic science, testified that he conducted the testing of the substance submitted for the June 21, 2019 controlled buy. He explained that once the evidence was dropped off by a submitting agency to the TBI facility, a laboratory technician verified the information and entered the evidence into a secure vault. Once Special Agent Hubert was ready to test the substance, a laboratory technician retrieved the evidence from the vault and delivered it to him. He determined the substance was .1 grams of heroin. After testing, the evidence was resealed with the identifying information and returned to the vault until retrieved by the submitting agency.

Ella Carpenter, an expert in the field of forensic science, testified that she was previously employed as a Special Agent Forensic Scientist with the TBI. She confirmed that she conducted the testing on the evidence submitted from the June 25, 2019 controlled buy. Ms. Carpenter gave a similar description as Special Agent Hubert regarding the TBI's evidence receiving process. After testing, she determined the substance to be .27 grams of methamphetamine.

During Ms. Carpenter's direct examination, defense counsel approached the bench and stated to the trial court, "Something is wrong with my client. He's profusely sweating from the top of his head and I don't know what's wrong with him. It's cold in here. I'm just concerned." The transcript indicates defense counsel returned to counsel's table, and the trial court directed Ms. Carpenter's examination to continue.

The State rested, and the Defendant elected not to present any proof. The jury found the Defendant guilty as charged and imposed fines for each conviction as follows: (1) $40,000 for count 1; (2) $15,000 for count 2; (3) $20,000 for count 3; and (4) $15,000 for count 4.

A sentencing hearing was held on June 20, 2023. Courtney Gelinas with the Tennessee Department of Correction prepared the presentence investigation report. Ms. Gelinas testified that the Defendant had admitted to using marijuana, methamphetamine, heroin, and depressants on the morning of trial, and her report showed the Defendant had an extensive criminal history. Certified copies of the convictions were entered without objection that included seven prior felony convictions and six misdemeanor convictions, along with multiple violations of supervised release. The Defendant did not have a diploma or GED and had no reported employment after 2002 even though he described himself as able-bodied.

Peggy Ann Owens, the Defendant's grandmother, testified that the Defendant lived with her before he was incarcerated. She stated the Defendant helped her with housework and helped his mother "a whole lot."

In determining the Defendant's sentence, the trial court stated that it had considered the evidence presented at trial and the sentencing hearing, the presentence report, the principles of sentencing, the arguments made for sentencing alternatives, the nature and characteristics of the criminal conduct involved, the evidence and information offered by the parties on mitigating and enhancement factors, any statistical information provided by the Administrative Office of the Courts ("AOC") regarding sentencing, the risk and needs assessment, any statement the Defendant made on his own behalf, and the Defendant's potential for rehabilitation. *See* Tenn. Code Ann. § 40-35-210(b).

Addressing the enhancement factors, the trial court found that the Defendant had a history of criminal convictions or behaviors in addition to those necessary to establish the appropriate range, noting the Defendant's lengthy criminal history. Tenn. Code Ann. § 40-35-114(1). The trial court found that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. *Id.* § -114(8). Lastly, the trial court found that the Defendant had no hesitation about committing a crime when the risk to human life was high, noting that "selling and dealing of drugs is about as bad as it can get." *Id.* § -114(10). As to mitigating factors, the trial court gave "a small amount of weight" to the fact that the Defendant was not on probation at the time of the offense and that the Defendant had a family. *Id.* § -113(13).

The trial court merged counts 1 and 2 and sentenced the Defendant to thirty years as a Range III, persistent offender for his Class B felony convictions of the sale and delivery of heroin. The trial court then merged counts 3 and 4 and sentenced the Defendant to fifteen years as a Range III, persistent offender for his Class C felony convictions of the sale and delivery of methamphetamine in an amount less than one-half gram. As to sentence alignment, the trial court noted the proof presented by the State established that the Defendant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood. *Id.* § -115(b)(1). The trial court also found that the Defendant was an offender whose record of criminal activity was extensive, noting the "shocking" number of convictions admitted. *Id.* § -115(b)(2). The trial court additionally found that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. *Id.* § -115(b)(4). The trial court ordered the sentences to run consecutively, resulting in a total effective sentence of forty-five years.

The trial court noted that the Defendant did not qualify for probation and ordered the sentences be served in confinement. In its reasoning, the trial court found that confinement was necessary to protect society, confinement was necessary to avoid depreciating the seriousness of the offense, and that measures less restrictive than confinement had been frequently or recently been applied unsuccessfully to the Defendant. *See* Tenn. Code Ann. § 40-35-103(1).

The Defendant filed a motion for new trial and an amended motion for new trial, which the trial court denied. As relevant to this appeal, the trial court in its written order found that: (1) the evidence was sufficient to support the Defendant's convictions; (2) the State sufficiently established the chain of custody of the narcotics evidence, and the Defendant waived the issue by failing to contemporaneously object at trial; (3) the admission of the recordings of the controlled buys did not violate the Defendant's confrontation rights because the CI's statements therein were not used to prove the matter asserted but to prove a conversation regarding drugs occurred; (4) the photograph of the CI was properly admitted, and the Defendant waived the issue by failing to contemporaneously object to the photograph's admission; (5) the Defendant's condition at trial did not impair his trial, and the trial court did not err by denying a continuance because such behavior was a delay tactic; (6) the Defendant's sentence was proper; and (7) the fines were not excessive as "none of the fines assessed were near the top of the possible range of potential fines allowed by statute."

This timely appeal followed.

## II.    ANALYSIS

On appeal, the Defendant makes multiple challenges to his convictions regarding whether: (1) the State sufficiently established the chain of custody for the seized narcotics; (2) the evidence was sufficient to support the Defendant's convictions based on an improper chain of custody over the narcotics; (3) the Defendant's right to confrontation was violated; (4) the probative value of the CI's photograph was substantially outweighed by the danger of unfair prejudice; (5) the trial court erred by failing to declare a mistrial and by denying the Defendant's motions to continue regarding the Defendant's alleged impairment at trial; (6) his sentences are excessive; and (7) the fines imposed are excessive.

The State responds that the Defendant has waived a majority of his claims due to multiple procedural preservation errors. Alternatively, the State asserts that the evidence was sufficient to support the Defendant's convictions, the chain of custody was sufficiently established, the evidence was properly admitted, and the trial court did not err in its rulings or in its imposition of the Defendant's sentences and fines. Additionally, the State argues

- 8 -

that the Defendant failed to request plain error review for any of his issues and is not entitled to such relief.

In reply, the Defendant argues that his motion for new trial properly detailed and preserved his issues on appeal, and he "adopts and relies upon each and every issue outlined" in his motion for new trial, amended motion for new trial, principal brief, reply brief, and "the entire record as a whole, as grounds for relief under the Doctrine of Plain Error[.]"

## A.    Waiver

We agree with the State that several of the Defendant's arguments on appeal are waived. We address these issues here and note that we have reordered the Defendant's issues for clarity.

The Defendant argues that the chain of custody regarding the heroin and methamphetamine was not sufficiently established because the CI was not subject to cross-examination. Although he filed a pretrial motion to suppress "any and all reports and testimony regarding the receipt or testing of any drugs" due to the CI's unavailability and general authentication principles under Tennessee Rule of Evidence 901, the trial court reserved these issues for trial. As relevant to this issue, in the trial court's April 6, 2023 ruling, it addressed only that the requirements under Rule 901(a) were satisfied as to the recordings of the controlled buys. At trial, the Defendant failed to object on chain of custody grounds to the admission of the narcotics evidence or to the testimony of the testifying law enforcement officers and TBI agents. In its order denying the motion for new trial, the trial court concluded that the Defendant had waived the issue. We agree that the issue is waived due to the Defendant's failure to object at trial. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); Tenn. R. Evid. 103(a)(1) (explaining that error may not be predicated upon a ruling admitting evidence unless a substantial right of the party is affected and a timely objection is made stating the specific grounds if not apparent from the context); *State v. Hill*, 638 S.W.2d 827, 830 (Tenn. Crim. App. 1982) (holding that the defendant waived appellate review of chain of custody when he "did not object to the introduction of the marijuana on the basis of a defect in the chain of custody").

The Defendant next contends that the admission of the recordings of the controlled buys violated his right to confrontation. The Defendant argues that the CI's statements and actions in the recordings were testimonial hearsay because "no other eyewitnesses with firsthand knowledge [were] presented at the trial" and contends that the trial court's error

- 9 -

in admitting these recordings was not harmless. However, while the trial court's order denying the motion to suppress the recordings based on the Defendant's confrontation argument is included in the appellate record, the transcript of the hearing is not included. Without this evidence, appellate review of the trial court's decision and reasoning is frustrated. It is the Defendant's burden to prepare an adequate record for review. *See State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); Tenn. R. App. P. 24(b). When the record is incomplete and does not contain a transcript necessary for consideration of the appealed issue, or portions of the record upon which a party relies, a reviewing court is precluded from considering the issue and must presume the trial court's ruling was correct. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). Moreover, the Defendant fails to identify any objectionable statement the CI made on the recordings, and aside from authority governing general confrontation law principles, he cites no authority to support his argument, makes no citations to the record where the alleged violations occurred, and fails to argue how the trial court erred in its ruling regarding this matter. *See State v. Williams*, No. W1999-01701-CCA-R3-CD, 2001 WL 128557, at *4 (Tenn. Crim. App. Feb. 15, 2001) (holding confrontation issue was waived when the defendant failed to identify the particular statements underlying his challenge); Tenn. R. App. P. 27(a)(7)(A) (requiring appellate briefs to contain an argument "setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record"); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Accordingly, the issue is waived.

The Defendant additionally asserts that his condition of impairment at trial improperly influenced the jury, and as such, the trial court abused its discretion by failing to grant his motions to continue or to declare a mistrial. However, the Defendant failed to include any citations to the record where these motions were made, what grounds they were premised upon, or any specific argument as to why the trial court's ruling was in error. *See* Tenn. R. App. P. 27(a)(7)(A); Tenn. Ct. Crim. App. R. 10(b). Moreover, upon review, the record before this court does not reflect the Defendant's making any motions for a continuance or for a mistrial. While we note that in the trial court's order denying the Defendant a new trial it stated that it did not err by denying a motion to continue because the Defendant's behavior was a delay tactic, at oral argument defense counsel agreed that the record was silent as to any motions in this regard. She explained that these issues were discussed during jury-out, off-the-record hearings. It is an appellant's duty to prepare a record which conveys a "fair, accurate, and complete account of what transpired with respect to those issues which are the bases of appeal." Tenn. R. App. P. 24(b); *see Bunch*, 646 S.W.2d at 160 ("A review of any discretionary action, at any stage of the proceedings,

wholly depends upon full knowledge of all the attendant facts and circumstances." (quoting *Stiller v. State*, 516 S.W.2d 617, 622 (Tenn. 1974))). Once again, we caution parties against participating in off-the-record discussions because such discussions may preclude appropriate appellate review. *See State v. Ledford*, No. E2023-01455-CCA-R3-CD, 2025 WL 213853, at *16 (Tenn. Crim. App. Jan. 16, 2025), *no perm. app. filed*. For these reasons, the issue is waived. However, despite waiver, we again note that in the absence of an adequate record for review, the trial court's decision is presumed correct. *See State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993); *Oody*, 823 S.W.2d at 559.

The Defendant further challenges the admission of the portrait-style photograph of the CI at trial. He contends this photo allowed the State to mislead the jury in an emotional and inflammatory way by portraying the CI as a teenager in high school. While the Defendant objected to the admission of the CI's photograph in his motion to suppress, we note that no specific photograph was identified in the motion. Additionally, the trial court reserved this issue for trial, where the portrait-style photograph of the CI was admitted without objection. At oral argument, defense counsel conceded that no contemporaneous objection occurred. Accordingly, the issue is waived. Tenn. R. App. P. 36(a); Tenn. R. Evid. 103(a)(1); *see State v. Barham*, No. W2012-02412-CCA-R3-CD, 2013 WL 5488592, at *3 (Tenn. Crim. App. Sep. 30, 2013) (holding that an evidentiary issue was waived when, despite being raised pretrial, no pretrial ruling was issued and no objection was renewed at trial). Moreover, defense counsel again stated at oral argument that discussions regarding the photograph occurred off the record. We reiterate our concern regarding off-the-record discussions that frustrate appellate review and again remind the parties that it is an appellant's duty to prepare an adequate record for such review. *See Ledford*, 2025 WL 213853, at *16; Tenn. R. App. P. 24(b).

The Defendant next argues that the trial court abused its discretion by imposing an excessive sentence. However, his argument in this regard is conclusory and limited to the contention in the conclusion section of his principal brief that no evidence was presented of any personal injury, property damage, or harm suffered by the community. He fails to explain how or why his aggregate or individual sentences are excessive. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. 10(b). The issue is waived. Notwithstanding waiver, each sentence is within the applicable range, and the trial court made relevant findings regarding length, alignment, and manner of service. *See* Tenn. Code Ann. §§ 40-35-112(c)(2)-(3).

Regarding plain error review for these issues, although the Defendant was on notice that many of his issues were waived, he provided only a general assertion that "the entire record as a whole" provided grounds for such relief and failed to make an argument regarding any of the plain error factors showing that he was entitled to relief. It is a

- 11 -

defendant's burden to persuade the appellate court that plain error exists. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007). As such, we decline to engage in plain error review. *See State v. Snipes*, No. W2020-00916-CCA-R3-CD, 2021 WL 4523074, at *10 (Tenn. Crim. App. Oct. 4, 2021) (declining to review for plain error when the defendant failed to argue why his case merited such relief); *see also State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *4 (Tenn. Crim. App. Nov. 9, 2023) ("Where a defendant fails to respond to a waiver argument, only particularly compelling or egregious circumstances could typically justify our sua sponte consideration of plain error relief." (quoting *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *5 (Tenn. Crim. App. July 14, 2023))), *perm. app. denied* (Tenn. May 16, 2024).

### B.    Sufficiency of the Evidence

The Defendant generally contends that the evidence presented at trial was insufficient to support his convictions, providing a citation to the standard of review announced in *Jackon v. Virginia*, 443 U.S. 307, 319 (1979). However, in his argument section, the Defendant does not challenge any specific element of the offenses and instead argues that the evidence was not sufficient due to the chain of custody issues and the CI's unavailability for cross-examination. The State responds that the evidence was sufficient.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). If a convicted defendant makes this showing, the finding of guilt shall be set aside. Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Appellate courts do not "reweigh or reevaluate the evidence." *Id*. (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

*State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

As pertinent to this case, it is an offense for a defendant to knowingly sell or deliver a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2), (3). A defendant acts knowingly "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id.* § -11-302(b). "'[D]elivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship[.]" *Id.* § -17-402(6). A "sale" involves a "bargained-for offer and acceptance" with "an actual or constructive transfer or delivery of the subject matter property." *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). Heroin is a Schedule I controlled substance. Tenn. Code Ann. § 39-17-406(c)(11). Methamphetamine is a Schedule II controlled substance. *Id.* § -408(d)(2).

Here, the evidence in the light most favorable to the State shows that on June 21, 2019, the CI arranged to meet with the Defendant on Smith Road and exchanged money with the Defendant for an L&M cigarette pack containing .1 grams of a substance later confirmed to be heroin. Next, on June 25, 2019, the evidence shows the CI met with the Defendant on Earl Avenue and exchanged money with the Defendant for a white, folded sheet of paper containing .27 grams of a substance later confirmed to be methamphetamine. While the Defendant's primary contention in this regard is that the evidence of the narcotics and the recordings should not have been admitted without affording him an opportunity to cross-examine the CI, we note that even if true, this would not affect the sufficiency of the convicting evidence. On a sufficiency claim, a reviewing court reviews all the evidence presented at trial, including evidence that was improperly admitted. *See State v. Gilley*, 297 S.W.3d 739, 763 (Tenn. Crim. App. 2008) (citing *State v. Longstreet*, 619 S.W.2d 97, 100-01 (Tenn. 1981)); *see also State v. Lozano*, No. M2017-01250-CCA-R3-CD, 2018 WL 4275919, at *4 (Tenn. Crim. App. Sep. 7, 2018) (holding the evidence sufficient to support a conviction for simple possession of marijuana by considering all evidence admitted despite the defendant alleging the State failed to establish "an unbroken chain of custody"). We conclude the evidence was sufficient to support the Defendant's convictions, and he is not entitled to relief.

## C.    Excessive Fines

The Defendant argues that the fines imposed by the jury are punitive and excessive because the Defendant does not have the ability to pay the fines, and as such, they will create undue hardship on his future rehabilitative endeavors. The State responds that the

fines are not excessive as they are within the statutory limits and urges this court to affirm the fines upon de novo review because the Defendant has not carried his burden of showing his inability to pay the fines.

When a statutory range of punishment permits a fine in excess of fifty dollars, the jury shall determine the amount of the fine. Tenn. Const. art. VI, § 14; Tenn. Code Ann. § 40-35-301. Fines are reviewed as part of the sentence. *State v. Bryant*, 805 S.W.2d 762, 767 (Tenn. 1991). Therefore, this court reviews a trial court's imposition of a fine under an abuse of discretion standard, granting a presumption of reasonableness to within-range sentences that reflect a proper application of the purposes and principles of the Sentencing Act. *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *State v. Jackson*, No. W2021-00208-CCA-R3-CD, 2022 WL 370090, at *5 (Tenn. Crim. App. Feb. 8, 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

To facilitate meaningful appellate review, the trial court must state on the record the sentencing principles it considered and the reasons for the sentence imposed. Tenn. Code Ann. § 40-35-210(e)(1)(B); *Bise*, 380 S.W.3d at 705. Mere inadequacy in the articulation of the reasons, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

"The trial court's imposition of a fine . . . is to be based upon the factors and principles of the 1989 Sentencing Act, such as, prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors, that are relevant to an appropriate, total sentence." *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997) (citing *Bryant*, 805 S.W.2d at 766). While a defendant's ability to pay the fine is a factor to consider, it is not a controlling factor. *State v. Butler*, 108 S.W.3d 845, 854 (Tenn. 2003). The defendant on appeal bears the burden of proving that the fines imposed are improper. *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).

Here, the jury fixed the fine at $40,000 for the sale of heroin in count 1; $15,000 for the delivery of heroin in count 2; $20,000 for the sale of methamphetamine in an amount less than a one-half gram in count 3; $15,000 for delivery of methamphetamine in an amount less than a one-half gram count 4; totaling $90,000 in fines. Each of these amounts is within the statutory range for the corresponding offense. *See* Tenn. Code Ann. §§ 39-17-406(c)(11), -408(d)(2), -417(b), (c)(2)(A). At the sentencing hearing, while

the trial court made detailed findings regarding the length, alignment, and manner of service, no mention of any kind was made regarding imposition of the fines. However, the combined amounts for the merged sentences are reflected on the judgment forms for count 1 and count 3 as "Fine Assessed." In its order denying the Defendant's motion for new trial, the trial court found only that "none of the fines assessed were near the top of the possible range of potential fines allowed by statute." As no findings regarding the relevant factors were made for the imposition of these fines, we cannot afford the trial court's sentencing decision a presumption of reasonableness in this respect, and we may not defer to the trial court's exercise of its discretionary authority. *See State v. Pollard*, 432 S.W.3d 851, 863-64 (Tenn. 2013).

While the Defendant argues against the punitive nature of the fines and that the record shows he cannot pay them, we note that

> although the defendant's ability to pay a fine is a factor it is not necessarily a controlling one. We recognize that an oppressive fine can disrupt future rehabilitation and prevent a defendant from becoming a productive member of society. Such results are not usually compatible with the purposes and principles of the 1989 Sentencing Act. However, a significant fine is not automatically precluded just because it works a substantial hardship on a defendant—it may be punitive in the same fashion incarceration may be punitive.

*Blevins*, 968 S.W.2d at 895-96 (quoting *State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993)).

While the State requests that we review the record and affirm the fines on de novo review, the factors to be considered and weighed regarding the imposition of fines require a fact-intensive inquiry. Additionally, when a trial court fails to place its reasonings on the record for a particular sentencing decision, the more appropriate action is to remand the case to the trial court for further findings regarding that matter. *See Bise*, 380 S.W.3d at 705, n.41; *State v. Climer*, No. W2024-00023-CCA-R3-CD, 2024 WL 4948973, at *6 (Tenn. Crim. App. Dec. 3, 2024) (remanding for findings by the trial court regarding the imposed fines), *no perm. app. filed*; *State v. Shanklin*, No. W2019-01460-CCA-R3-CD, 2021 WL 3485939, at *5 (Tenn. Crim. App. Aug. 9, 2021) (majority holding same). Accordingly, we reverse the trial court's imposition of the fines and remand this case to the trial court for further findings based upon consideration of the relevant factors.

D. Corrected Judgment Forms

We remand the case to the trial court for the entry of corrected judgment forms to reflect the sentencing and fine information for the separate verdicts. While the trial court prepared separate judgments of convictions for each count that reflected the merger of the counts, it left blank the sentence and fine information for counts 2 and 4 and listed the aggregated total fine amount for the merged convictions on the judgment forms for counts 1 and 3. *See State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015) ("Although the trial court is required to merge two [alternative] jury verdicts of guilt in a single 'judgment of conviction,' the trial court nonetheless must record the jury's disposition in each of the counts."); *State v. Patrick*, No. E2001-00456-CCA-R3-CD, 2002 WL 181358, at *2-3 (Tenn. Crim. App. Feb. 1, 2002) (detailing that two fines of $25,000 each merged into a single fine of $25,000 upon merger of the underlying convictions). Accordingly, on remand, the trial court is ordered to correct the judgment forms in each count to reflect the separate sentence and fine information.

III. CONCLUSION

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed with respect to the Defendant's convictions. We reverse the trial court's imposition of the fines and remand the case to the trial court for findings based upon the relevant factors and to correct the judgment forms in a manner consistent with this opinion.

s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE